### BEACON FALLS RUBBER SHOE CO. v. BURNS.

(Supreme Court, Appellate Division, Third Department. January 14, 1903.)

1. SALE—WRITTEN CONTRACT—CONSTRUCTION.

A credit order for goods was canceled by the company when the buyer refused to fill a blank stating his financial condition. Afterwards the buyer offered to pay either by a sight draft attached to a bill of lading, or in advance by certified check, and asked for another blank statement.. The company replied: "If you are willing to pay cash, or fully satisfy us that your bill will be paid promptly when due, we will * * * fill the order. * * * We will send you invoice, and if you are so disposed you can discount it, and we will ship promptly." Following this, the buyer sent the statement at first refused, and the company replied, acknowledging its receipt and agreeing "to deliver on the agreement previously made." Part of the goods were sent, but, on the refusal of the buyer to pay cash for those sent, the balance were withheld. Held, that the contract as finally completed was for a cash sale, and the seller was not liable for failing to send the balance of the goods.

Appeal from special term, Broome county.

Action by the Beacon Falls Rubber Shoe Company against John J. Burns. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The action is brought to recover the purchase price of a stock of rubber goods delivered by the plaintiff to the defendant on or about the 23d day of September, 1899. The value of the goods delivered was $200.16. The defense is that these goods were part of a larger order for goods which were agreed to be sent by the plaintiff to the defendant, the balance of which the plaintiff failed to send, to the damage of the defendant in the sum of upwards of $56. A tender was made of the balance claimed to be due, to wit, $143 and some cents. The plaintiff's answer to the defendant's counterclaim is that the goods were to be paid for when shipped, and that the refusal of the defendant to pay for the first shipment when made excused the plaintiff from further performance of its contract. The defendant contended that the goods were

not to be paid for until the 1st of December after the shipment. This question was by the trial court submitted to the jury, who found for the plaintiff for the sum remaining due for the purchase price of the goods shipped over and above the amount tendered, to wit, the sum of $56 and interest. From the judgment entered upon this verdict, defendant has appealed.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

T. J. Mangan (D. H. Carver, of counsel), for appellant.

T. B. & L. M. Merchant, for respondent.

SMITH, J. The defendant is probably right in his contention that the construction of this contract was for the court and not for the jury, and that there was no question of fact in the case for the jury to determine. The jury has found that the contract made provided for cash payment upon the receipt of the goods. If, in our opinion, the contract should be so construed, the judgment is right, and should not be disturbed because the court allowed the jury to construe the contract instead of itself giving such construction. If, however, under the contract, payment need not be made until the 1st of December following the shipment, then, as it was clearly contemplated that all of the deliveries should be made before that time, the plaintiff has violated its contract, and the tender made was sufficient to satisfy all the damages to which it is entitled. This contract rests purely in writings. Prior to July 8, 1899, the soliciting agent of the plaintiff called upon the defendant and took his order for rubber goods of the value of upwards of $700. Upon the order, the terms were named as payable the 1st of December, with 1 per cent. discount if paid upon the 1st of November, and 2 per cent. discount if paid upon the 1st of October. Upon the receipt of the order, plaintiff made examination of the defendant's credit, which was unsatisfactory, and sent to the defendant a blank statement asking him to fill out the same. This the defendant refused to do, asserting that he was worth probably from $13,000 to $15,000 over all liabilities, but refusing to make the detailed statement required. Thereupon the plaintiff wrote that the order was canceled. Thereafter, again writing, the defendant protested that an examination would show that he was abundantly solvent, and used this expression: "If you wish it, I can arrange to pay a sight draft with B. L. attached." In response to that, however, the plaintiff still declined to fill the order by reason of the refusal of the defendant to make the statement. Upon July 22d, the defendant wrote to the plaintiff a letter, and said:

"But in my last letter I asked if you would not be willing to ship goods with sight draft attached to bill of lading. Surely your reports concerning me cannot be so bad that you would not be warranted in doing this, as the goods would not be delivered to us until after the draft is paid. If you do not feel safe in shipping them in this way, I perhaps can send you a certified check in advance. Would either of these propositions be satisfactory to you?"

He then states that he has lost the blank statement that had been sent to him to sign, and asks them to send another, and in the last sentence of his letter says: "If there is any way that I can exchange my money for your goods I want to find it out." In reply, the plaintiff sent the following letter on July 26, 1899:

"Your favor of the 22nd is received, and you are now getting to a basis on which we are willing to do business. * * * If you are willing to pay cash, or fully satisfy us that our bill will be paid promptly when due, we will be very glad to fill the order. * * * We should say it would probably be about the 15th of September or the 1st of October, but as soon as the goods are ready we will send you invoice, and, if you are so disposed, you can discount it and we will ship promptly. We will enter your order at once on the factory books to be made, and have no doubt that we can get them to you in due season."

Thereupon, on August 1st, the statement was rendered, and upon August 3d the plaintiff wrote to the defendant the following letter:

"Your letter of the first, giving financial statement, is received, for which accept thanks. We have entered your order to make, and will deliver as promptly as possible on the agreement previously made."

Thereafter, and upon the 23d day of September, about $200 worth of the goods were shipped. This was in pursuance of a request by the defendant that the plaintiff ship some of the goods as soon as they were ready. Upon September 27th, four days thereafter, the plaintiff wrote a letter to the defendant, of which the following is a copy:

"Dear Sir: After bill of your goods had gone, our attention was called to the fact that terms were stated as 2 per cent. September first. This should read 2 per cent. October first. We have got a nice little lot of goods now coming in on your back order which will be ready to ship early next week."

The defendant, without paying for these goods, insisted upon further shipments forthwith. The plaintiff then protested that the sale was for cash, and that upon payment of cash for the goods already sent they would send the balance. The defendant insisted that he was not required to pay for the goods until December 1st, and that therefore the balance of the goods should be shipped forthwith.

It will be seen that the whole controversy centers upon the meaning of the letters of July 26th and August 3d. The original order was given payable the 1st of December, with a discount if paid the 1st of November or the 1st of October. The plaintiff, becoming fearful of the defendant's responsibility, refused, as it had the right, to fill that order. Thereupon the defendant wrote proposing to them to send a sight draft with the bill of lading attached, and stating that if there was any way in which he could exchange his money for their goods he wanted to find it out. In response to that the plaintiff wrote the letter of July 26th. To my mind, this letter constituted an acceptance of the defendant's proposal to make the sale a cash sale, and the agreement thus constituted was, I think, the agreement referred to in the letter of August 3d. This conclusion is re-enforced by the fact that this letter was written before the statement of August 1st had been made, and before, therefore, the plaintiff had become satisfied that the bills would be paid promptly when due. The later letter of August 3d is practically a ratification of the agreement as expressed in this letter of July 26th. There was no other agreement to which reference could be made. The original order, providing for payment upon the 1st of December, the plaintiff had declined to accept. Nowhere in the correspondence can there be found the intent to agree to such terms. That this was the understanding of the plaintiff at least, would seem to appear from the letter of September 27th, where they note the cor-

rection that the discount should be 2 per cent. on October 1st. Nothing is said about a discount upon November 1st, but that was stated to them apparently as the cash price of the purchase made.

If these views are correct, the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.